FRANCIS M. JOHNSON & others *vs.* ARBA CAMPBELL & another.
ARBA CAMPBELL & another *vs.* FRANCIS M. JOHNSON & others.

Suffolk. March 30. — June 26, 1876. DEVENS & LORD, JJ., absent.

A letter issued by a firm of commission merchants, inviting consignments of goods and stating that they " will be covered by insurance as soon as received in store," does not import that they personally were to be the insurers of such goods, and is fulfilled by their obtaining reasonable and proper insurance against fire.

A consignee, who effects insurance upon goods consigned to him, in pursuance of an agreement that " all consignments will be covered by insurance as soon as received in store," is not required to effect the insurance in the name of the consignor, or place the policy in his possession or control.

Insurance effected by a consignee " on merchandise his own or held by him in trust, or on commission," is not limited merely to his proprietary interest, but enures to the benefit of the consignor.

A consignee, who has made advances upon goods consigned to him, and effected insurance for the benefit of the consignor, has, upon the destruction of the goods by fire without his fault, the same lien upon the insurance money that he had upon the goods themselves.

TWO ACTIONS OF CONTRACT. The first was brought by Francis M. Johnson, Horace Eaton and George A. Brackett, commission merchants and copartners, doing business in Boston under the firm name of Johnson, Eaton & Brackett, against Arba Campbell and Charles Campbell, manufacturers of leather and copartners, doing business at Owego, in the State of New York, under the firm name of A. Campbell & Co., to recover the difference between the amount of their advances on leather sent them by the defendants for sale, and the amount received by the plaintiffs from insurance companies, after the loss of the goods by fire.

The second action was brought to recover the full value of the goods destroyed. The declaration contained two counts, one count alleging that the defendants themselves assumed insurance of the plaintiffs' goods, and were liable to the plaintiffs for their value ; and the other count, that the defendants agreed to effect insurance upon the plaintiffs' goods in suitable companies, in the name of the plaintiffs, or in such manner that the plaintiffs should be the owners of the policies, and entitled to control and recover upon the same, but had neglected so to do.

At the trial in the Superior Court, before *Colburn*, J., without a jury, it appeared that at the time of the great fire in Boston,

November 9 and 10, 1872, Johnson & Co. had in their store, in Boston, sheep-skins, consigned to them for sale by Campbell & Co., of the market value of $2346.70, upon which they had advanced, up to the time of the fire, about $1850.54.

At this time, Johnson & Co. had insurance in eighteen different companies on the stock of goods in their store, to the amount of $165,000 in all, and all of the companies were solvent, and in good repute and condition, until affected by the fire. All of the policies were taken in the name of Johnson & Co., and in each of said policies a printed slip was used to describe the subject of insurance, the material part of which was as follows :

———— " do insure Johnson, Eaton & Brackett and their legal representatives,                  dollars on merchandise, principally hides and leather, their own or held by them in trust or on commission or sold but not removed from the building, contained in," &c.

These policies contained no clause " for whom it may concern," nor any provision with reference to the interests of third parties, unless such is the legal effect of the preceding clause.

At the time of the fire, the value of the goods covered by the insurance was substantially the amount of all the policies. Most of these goods had been consigned for sale on commission, but a small part was the absolute property of Johnson & Co. They belonged to a great number of distinct consignors, and there was no evidence to show whether any, or what contracts existed between them and Johnson & Co. as to insurance, or what advances, if any, had been made on their consignments, or what was the state of accounts between them and Johnson & Co. A small portion of the goods had been sold, but not removed from the building.

Many of these insurance companies were rendered insolvent by this fire, and the average amount received from insurance was about sixty per cent. of the amount of loss proved, the percentages paid by the different companies being widely different. The amount of loss proved was about the market value of all the goods in the store at the time of the fire, including the goods of Johnson & Co., of Campbell & Co., and the other consignors, and the goods sold but not removed.

Campbell & Co. had been in the practice of consigning goods for sale to Johnson & Thompson for many years prior to January, 1870, upon the agreement that the consignees should sell the goods for five per cent. commission, which should include guaranty, insurance, and all expenses except freight and cartage. The firm of Johnson, Eaton & Brackett was formed January 1, 1870, Johnson being a member of both firms. After the new firm was formed, one of the Campbells had a conversation with Johnson, and concluded to go on with the new firm on the same terms as with the old. In this conversation, Johnson stated to said Campbell that they always kept themselves well insured; that they were obliged to do so, as their interest in the goods was always much larger than that of the consignors; that they always kept fully insured for their own interest and that of the consignors.

On January 15, 1870, the firm of Johnson & Co. issued a circular letter, one of which was received by Campbell & Co., the material part of which was as follows: " Our charges for selling will be five per cent., which includes guaranty, insurance against fire, labor and storage. All consignments will be covered by insurance as soon as received in store."

The judge found that the goods of Campbell & Co. were consigned upon the terms stated in the above extract from the circular letter, and that no usage of trade or custom was shown to indicate that the terms of the letter were used in any special or in any other than their ordinary, natural sense, and that Campbell & Co. had never been informed, or inquired, from the beginning of their dealings with these firms until the correspondence after the loss, in what offices, in whose names, or in what manner insurance was effected by Johnson & Co., nor been informed or inquired to whom or for what paper their goods had been sold, but Johnson & Co. had always assumed the sales. All the goods of Campbell & Co. in the store at the time of the fire were destroyed, without fault or want of due care on the part of Johnson & Co.

Campbell & Co. requested the judge to rule as follows: " That, by the terms upon which they consigned their goods, Johnson & Co. were insurers, and responsible for the entire value of the goods.

"That, if they were not themselves insurers, they were bound to effect insurance in such manner that the plaintiffs would be the legal owners of the policies, and entitled to control and recover upon the same, and that the insurance they effected was not a compliance with their contract.

"That upon the evidence in the case, Johnson & Co. were not entitled to limit the plaintiffs to an equal distribution or marshalling received from the insurers with themselves and other owners of the goods.

"That Johnson & Co. were not entitled to appropriate insurance to their own goods in store until the claims of Campbell & Co. on their goods lost are satisfied.

"That if the insurance effected was a compliance with their obligation, the amount received from the underwriters ought to be divided between Campbell & Co. and Johnson & Co. in proportion to their interests in the stock, the interest of Johnson & Co. being the amount of their advances, and the interest of Campbell & Co. being the value of the stock above the advances, and that that would close the account."

It appeared that the underwriters deducted five per cent. from the agreed value of the goods of all consignors on which to calculate their dividends; and Johnson & Co., after objection, accepted that method of settlement, and credited Campbell & Co. accordingly, it appearing to be the most they could obtain without litigation ; but Campbell & Co. did not authorize or assent to the settlement, and asked the judge to rule that they should be credited with the dividend of insurance on the full value of the goods, unless the goods were paid for in full as if sold.

The judge declined to give these rulings, except the ruling in relation to the five per cent. deduction, and ruled that Johnson & Co., having effected insurance, as hereinbefore stated, and the loss having occurred without fault on their part, they were entitled to recover of Campbell & Co. the difference between the amount of the advancements and the sixty per cent. received from insurance, crediting Campbell & Co. with the five per cent. allowed on the value, amounting to $88.73, and ordered judgment accordingly for the plaintiffs in the first suit for $471.68 damages, and for the defendants in the second suit. To these rulings, except as to the five per cent. deduction, Campbell & Co.

alleged exceptions ; and Johnson & Co. alleged exceptions to the ruling charging them with the five per cent. deduction allowed to the insurance companies.

*R. R. Bishop*, for Johnson & Co.

*R. H. Dana, Jr. & F. Dabney*, for Campbell & Co.

AMES, J. The circular issued by the firm of Johnson & Co., inviting consignments of goods, does not import that they personally were to be the insurers of such goods against fire. It is merely a promise that the goods shall be insured, or, in the language of the circular, " shall be covered by insurance as soon as received in store." A promise to insure is fulfilled by obtaining reasonable and proper security against a contingent loss. The commission which they were to charge upon sales was to compensate them for all their charges for guaranty, for effecting and maintaining insurance, and for certain incidental expenses and services attending the reception and care of the property that should be consigned to them.

There can be no doubt that the policy which they obtained purported to cover not only goods which belonged to them, but also such as they held in trust or on commission. That is, the insurance was not limited merely to their proprietary interest. It was to make good the damage to the goods, and would enure to the benefit of the consignor. Whatever the consignees might recover on such policies in excess of their own claims, they would hold in trust for the consignor. *Waters* v. *Monarch Assurance Co.* 5 El. & Bl. 870. *De Forest* v. *Fulton Fire Ins. Co.* 1 Hall, 84. *Stillwell* v. *Staples*, 19 N. Y. 401. It follows, therefore, that the consignors were in fact insured, and there is nothing in the contract that imports that the insurance was to be effected in their name, or that the policy should be in their possession or control. The consignees have only undertaken that the goods shall be stored, and kept insured, until they are sold and delivered, and this promise they have fulfilled.

We see nothing in the evidence reported to sustain the position that the consignees were confined to the goods themselves as the means of recovering their advances. To the owner of those goods they stood in the relation of creditors, and if from any cause, without their fault, the proceeds of the goods proved insufficient to repay their advances, they would have a valid claim

against the consignors for the amount found deficient on settle‑ ment. The insurance was general upon the entire mass of goods in which Johnson & Co. had any insurable interest, and no at‑ tempt was made in any of the policies to distinguish the prop‑ erty of Campbell & Co. from the rest. As between Johnson & Co. and the various insurance companies, the former were treated as if they were the owners of all the property insured, and as to all the world except the respective consignors, they might prop‑ erly be so considered. *De Forest* v. *Fulton Fire Ins. Co., ubi supra*. As the insurance money fell short of the loss, it is diffi‑ cult to see any other mode in which the amount recovered could be equitably apportioned among the parties in interest than that which the consignees have adopted. The goods of Campbell & Co., so long as they remained in the hands of the consignees, were security for the advances made by the latter; and when the goods were destroyed by fire, the amount recovered upon their loss was substituted in their place, and was held subject to the same lien. The rulings at the trial upon this point were there‑ fore correct. The exceptions of Johnson & Co. have been waived, and the exceptions of Campbell & Co. are

*Overruled.*