WUNDERLICH and another, Respondents, vs. THE PALATINE FIRE INSURANCE COMPANY and others, Respondents, and THE GEORGE E. FOSTER LUMBER COMPANY, Appellant.

*October 2 — October 20, 1899.*

*Fire insurance: "Open policy:" Executory contract of sale: Vendee's right to insurance money: "Loss payable" clause: Agency: Destruction of subject matter: Implied condition excusing delivery.*

1. *It would seem* that a policy of fire insurance covering lumber owned by the insured "or held in trust or on commission, or sold but not delivered, piled in their mill yard," is not an "open policy" such as would authorize the owner of any such lumber, in case of loss, to sue directly for the insurance on his property.

2. Where the insured property in such case was covered by an executory contract of sale but none of it, at the time of its destruction, had been so separated or delivered as to vest any title in the vendee, the vendors' right of recovery on the policy was complete without the "sold and not delivered" clause, and was not affected by it unless they were thereby absolved from some disclosure as to the sale otherwise required under the policy; and the vendee had no interest in the lumber which would give it a right of action against the insurer, even construing the policy as an open one.

3. A provision in a policy of insurance that the loss shall be payable to a third person as his interest may appear does not give such person an independent right of action against the insurer, but the question whether he has any, and if so what, interest in the insurance money by virtue thereof is entirely between him and the insured, and bears merely on the distribution of such sum as the latter may ultimately recover.

Wunderlich and another vs. The Palatine Fire Ins. Co. and others.

4. The vendors of a portion of the lumber in a mill yard under an executory contract requiring them to keep the lumber insured, with policies to be assigned to the vendee as its interest might appear, took out policies in their own names, in some of which the loss was made payable as provided in the contract, but in all of which their relation to the companies was the same as to all lumber in their yard, without distinguishing or differentiating that covered by the contract. *Held,* that the vendors did not act as agents of the vendee in effecting the insurance.

5. The clause in such contract requiring the vendors to insure the lumber with policies assigned to the vendee as its interest might appear was intended to secure the vendee to the extent of the advances which it might make upon the lumber while it remained in the possession of the vendors, and not against the loss of profits which would be occasioned by the destruction of the property.

6. The implication of a condition in the contract for the sale of the lumber that delivery should be excused in the event of its destruction is *held* not to be excluded by the agreement to keep it insured with policies assigned to the vendee as its interest might appear,— such agreement not being equivalent to an agreement by the vendors themselves to insure the property or its existence.

APPEAL from judgments of the circuit court for Langlade county: JOHN GOODLAND, Circuit Judge. *Reversed.*

The defendants, sundry insurance companies, insured the plaintiffs, Wunderlich Bros., to the amount of about $24,000, "on lumber," etc., "owned by Wunderlich Bros., or held in trust or on commission, or sold but not delivered, piled in their mill yard," commonly designated the "lumber clause." Certain of these policies, amounting to some $12,000 or $14,000, also contained what is known as the "loss-payable clause," viz.: "Loss, if any, payable to *George E. Foster Lumber Company,* as their interest may appear." On May 6, 1898, the entire stock of lumber, claimed to aggregate about $30,000 in value, was destroyed by fire, and the plaintiffs brought suit for the insurance against the insurance companies, defendants. The *George E. Foster Lumber Company* was impleaded upon an order of the court, and served a pleading called an answer and a cross complaint, in which

it set up, besides the writing of the policies above mentioned, the fact that on February 23, 1898, the plaintiffs made to it a proposition as follows:

"We hereby give you an option to buy, as you may elect, all our lumber of the following kind, which we may have sawed and will saw during this season, at the following prices, f. o. b. Antigo: [Different kinds and grades of lumber specified, with prices]; to be hauled and shipped whenever you direct, you to pay fifty per cent. cash as fast as every 300 M. are in piles, and balance as fast as shipped. We to keep lumber insured for one year, and policies to be assigned to you as your interest may appear. . . . All lumber to be shipped not later than November 1, 1898, or paid for less the amount of hauling and loading as near as can be estimated. We will have about 600 M. basswood, 600 M. soft elm, and 350 M. birch."

That option was accepted the following day according to its terms. None of the lumber so bargained for had been separated or ascertained at the time of the fire, but was mixed in the piles with other grades not purchased.

It was further alleged by the appellant that the purchase price of said lumber was about the sum of $12,000, of which it paid $2,000 at the time of making the bargain, and that the value of the lumber at the time of the fire was about $17,000. Appellant also alleged that at the time of said first contract it was agreed and understood that, whether the title to said lumber passed to the defendant or not, its interest therein was and should be the entire value of the lumber, less the amount of the unpaid purchase price, and the word "interest" in said contract was used in that meaning; that the agreement to keep the lumber insured and policies assigned to it as its interest might appear was understood to require policies to be assigned to the full value of the lumber sold to it; that the indorsement upon the policies of the "loss-payable clause" was made at the request

of the plaintiffs, without the knowledge of the defendant as to the amount thereof; that the defendant did not accept such policies as a compliance with the provisions of its contract; and that the plaintiffs failed and neglected to make payable to said defendant enough of said insurance to cover the full value of its said lumber,— and prayed, as against the plaintiffs, that a proportionate part of all insurance recoverable by them should be adjudged to be payable to the appellant. And by its so-called "cross-complaint" setting up substantially the same facts, it prayed that it might recover from the defendant insurance companies, by virtue of the so-called "lumber clause," the proportion of the total insurance which the market value of the lumber contracted to be sold to it bore to all the lumber in the yard, to wit, about seventeen thirtieths; and by a second so-called cross complaint, addressed to those insurance companies in whose policies was found the "loss-payable clause," demanded recovery of the full amounts of their respective policies, having alleged in addition, as to them, the giving of notice and proofs of loss. The defendant insurance companies defended against any liability to the plaintiffs on the ground of their fraudulent representations in the making of proofs of loss, which controversy is still undetermined.

Upon the trial of the issues raised by the appellant's pleading, the defendant companies objected to any evidence under the cross complaint as to them, which objection was sustained, and judgment rendered in favor of the defendant companies and against the appellant, dismissing its cross complaint. Upon the issue between the plaintiffs and the appellant a similar objection was sustained, except as to the one fact, which was established and found, of a tender before the commencement of the suit by the plaintiffs to the appellant of the $2,000 paid by the latter upon the contract of purchase, with interest to the time of such tender; that said tender had been kept good, and was confirmed by the

delivery of the money at that time into the hands of the clerk. Judgment was thereupon rendered against the appellant upon its answer and prayer for relief against the plaintiffs, with costs. The appeal is from both said judgments.

For the appellant there were briefs by *Van Hecke & Smart*, and oral argument by *E. M. Smart*. They contended, *inter alia*, that an agreement for insurance is an express provision, negativing any implied condition of continued future existence of the subject matter. Where a person contracts to *procure* insurance on property, or it is his duty to do so as an agent, in case of a breach of the contract or duty he must respond in damages to the amount he should have insured for, and becomes himself the insurer. *McAlpine v. St. Clara F. Academy*, 101 Wis. 468; *Lancaster Mills v. Merchants' C. P. Co.* 24 Am. St. Rep. 586, 609; Beach, Cont. § 1710; *Lindsay v. Pettigrew*, 5 S. Dak. 500; Sutherland, Dam. (2d ed.), §§ 772, 862; 1 Am. & Eng. Ency. of Law (2d ed.), 1068; *Strong v. Manufacturers' Ins. Co.* 20 Am. Dec. 515, note; *De Tastett v. Crousillat*, 2 Wash. C. C. 132; *Park v. Hamond*, 4 Campb. 344; *Douglass v. Murphy*, 16 U. C. Q. B. 113. Appellant is a direct party to the insurance contracts; it is not merely an appointee named to receive moneys which plaintiffs may recover; it may sue and recover directly in its own right. The clause "in trust or on commission, or sold but not delivered," is in legal effect the same as "for whom it may concern." *California Ins. Co. v. Union C. Co.* 133 U. S. 387, 409; *Lee v. Adsit*, 37 N. Y. 87, 90; *De Forest v. Fulton F. Ins. Co.* 1 Hall, 135. If anything it is broader in its scope because it was held that "for whom it may concern" did not include anything but a legal interest or ownership. That is, it would not cover liens or other equitable interests outside of those of the nominal insured. *McDonald v. Black's Adm'r*, 55 Am. Dec. 448, 452. But see contra, *Pacific Ins. Co. v. Catlett*, 4 Wend. 75, 79. But the words "sold, but not

delivered" cover our case exactly. They relate to goods of which there is an executory sale, but no legal delivery so as to pass legal title. *Waring v. Indemnity F. Ins. Co.* 6 Am. Rep. 146, 148; *Lockhart v. Cooper*, 42 Am. Rep. 514, 517; *Lucas v. Ins. Co.* 48 Am. Rep. 383, 389. The words "in trust" mean "goods with which the assured was intrusted, not goods held in trust in the strict legal sense." *Strohn v. Hartford F. Ins. Co.* 33 Wis. 648, 655; *Home Ins. Co. v. Baltimore W. Co.* 93 U. S. 527. The person in whose name the insurance policy is issued may sue and recover the whole amount as trustee, etc.; but the beneficiary may also sue in his own name and in his own behalf directly on the policy as if he were particularly named therein. *Strohn v. Hartford F. Ins. Co.* 33 Wis. 648; *Johannes v. Phenix Ins. Co.* 66 Wis. 50, 56; *Jefferson Ins. Co. v. Cotheal*, 7 Wend. 72; *Pitney v. Glen's Falls Ins. Co.* 65 N. Y. 6, 18; *Somes v. Equitable S. Ins. Co.* 12 Gray, 531; *Farrow v. Comm. Ins. Co.* 18 Pick. 53; *Williams v. Ocean Ins. Co.* 2 Met. 306; *Pacific Mut. Ins. Co. v. Catlett*, 4 Wend. 79; *Lazarus v. Comm. Ins. Co.* 5 Pick. 76; *Sargent v. Morris*, 3 Barn. & Ald. 280; *Sleeper v. Union Ins. Co.* 20 Am. Rep. 706; *Ballard v. Merchants' Ins. Co.* 29 Am. Dec. 444; 1 Ency. of Pl. & Pr. 392, note; 8 Am. & Eng. Ency. of Law (1st ed.), 88, 89.

*T. W. Hogan* and *John Barnes*, for the plaintiffs.

For the defendant insurance companies there was a brief by *Mylrea & Bird*, and oral argument by *W. H. Mylrea* and *C. B. Bird*.

DODGE, J. 1. That portion of the answer which is designated as a "cross complaint" seeks to set up an independent cause of action in favor of the appellant against the insurance companies upon two grounds:

*First*, as against all the companies, upon the proposition that the so-called "lumber clause" results in insurance to whomever may prove to be the owner of any lumber held

by Wunderlich Bros. on commission, in trust, or sold and
not delivered, and that the owner of such property may sue
direct for the insurance upon such property.   A large num-
ber of authorities are presented by appellant's counsel to the
proposition that under " open policies," running " to whom
it may concern," or " to John Doe, for the benefit of whom
it may concern," or "to John Doe, for the benefit of the
owners," the insurer is in direct privity with the owner, and
the latter may sue to recover the insurance upon his prop-
erty; amongst which authorities is the decision of our own
court in *Strohn v. Hartford F. Ins. Co.* 33 Wis. 648.   He
thereupon contends that the force and effect of the " lumber
clause " in these policies is the same.   It would seem, as an
original proposition, that the distinction between the two
kinds of policies is most marked.   A contract to insure " A.
B., or whom it may concern," or to insure " the owners,"
against loss upon certain property, is very different from one
to insure A. B. against loss on the same property, whether
he owns it wholly or others have rights in it.   In the first
instance, the very contract itself recognizes an uncertainty
as to the parties thereto, and a willingness and intent on the
part of the insurer to enter into contractual relations with
undisclosed and even changing parties on the other side.
The latter, however, just as clearly evinces intent to confine
the contractual relation to the person named.   In the one
case the very words and obvious intent of the contract are
effectuated by treating whomever is concerned or whom-
ever is the owner as the insured and entitled to sue, while
in the other the imposition upon the insurer of any one as
its promisee other than the person specified is in contradic-
tion of the words of the contract.   In *Johannes v. Phenix
Ins. Co.* 66 Wis. 50, the distinction is well illustrated.   It is
not surprising, therefore, that the equivalence of these two
provisions is substantially unsupported by authority, except
for an *obiter* remark in the individual opinion of a judge of

the superior court of New York city in *De Forest v. Fulton F. Ins. Co.* 1 Hall, 84, 135. However, neither this question, nor several others discussed, need be answered in this case; for the appellant concedes, as indeed the facts establish, that he was not the owner of any of the burned lumber. His contract of purchase, up to the time of the fire, was wholly executory, and none had been so separated or so delivered as to vest any title in appellant. It all remained the absolute property of the plaintiffs, whose right of recovery against the insurance companies is therefore complete, without the "sold and not delivered" clause, and is not enlarged by it, unless, perhaps, they are thereby absolved from some disclosure as to the fact of sale otherwise required by the policy. Even if this were an open policy, the appellant has no ownership or interest in the lumber to give it a right of action against the insurer.

*Second.* Appellant asserts an independent right of action against certain of the defendant companies by virtue of the provision that loss should be payable to it as its interest might appear. It made proofs of loss under those policies, and insists that its right of recovery cannot be prejudiced by any frauds of plaintiffs in their proofs. The rights of a claimant under this familiar clause, where the title and ownership of the property remains in the assured, are no longer open to doubt or debate in this state. They were settled by *Chandos v. Am. F. Ins. Co.* 84 Wis. 184; *Carberry v. German Ins. Co.* 86 Wis. 323; and *Williamson v. Mich. F. & M. Ins. Co.* 86 Wis. 393. The contract is with the assured, to him alone is the insurer liable, and upon his acts will that liability depend. The claimant under such a provision is not an assignee of the policy so as to hold an independent right of recovery, but a mere appointee to receive the whole or a part of the money which the assured is entitled to recover, but to receive it under and in the right of the assured. The question whether any, and if so what, interest the ap-

pellant here may have, by virtue of that clause, to any portion of the insurance money, is entirely between it and the plaintiffs, and bears merely on the distribution of such sum as the latter may ultimately recover.

A further claim by appellant, that the transactions amounted to an insurance to it upon its interest in the contract of purchase of the lumber, taken out by the plaintiffs as its agents and on its behalf, is not at all borne out. In the first place, no such agency was created by the contract of purchase. That instrument stipulated, not that the plaintiffs should procure insurance for the benefit of appellant upon its interest either in the lumber or in the contract, but should insure the lumber itself, which belonged to plaintiffs themselves. The transactions between plaintiffs and the insurance companies, consistently with that stipulation, show a dealing entirely on their own behalf, and the taking of policies in which they were the payees, and in all of which their relation to the insurance companies was the same as to all lumber in their yard, without distinguishing or differentiating that which appellant had agreed to purchase. All these circumstances exclude the existence of any idea of agency in the minds of either of the contracting parties at the writing of these policies.

We agree with the conclusion of the circuit court that, under the allegations of the cross-complaint portion of appellant's answer, the appellant has no independent right of action or recovery against the defendant companies.

2. Turning now to that portion of the appellant's answer which relates to its claim against such insurance money as may be recovered by the plaintiffs, the appellant's contention is that the word "interest" in the clause of the contract whereby the plaintiffs agreed to keep the lumber insured for one year, and policies assigned to appellant as its interest may appear, is to be construed as meaning the loss which would fall on appellant by destruction of the prop-

erty, to wit, the difference between the market value of the lumber and the unpaid portion of the purchase price, thus including the profit resulting from any appreciation. The plaintiffs' contention, on the other hand, is that the word " interest " was used by both parties to mean the amount which appellant had actually paid upon the lumber, and to the return of which it would be entitled upon the destruction of the property so that the contract of sale could not be carried out. The question, of course, is, What was, in fact, the intention of the parties in the use of these words? for they had a perfect right to stipulate between themselves as they chose for the payment of any sum, or for the acquisition of any rights in the insurance, in the event of loss by fire. The word "interest" is used loosely, and is open to construction; for, as we have already pointed out, the appellant acquired no actual interest in the lumber itself, and the word is used, not in that sense, but as indicating some other interest or right which appellant might have under its contract, and which the parties intended to protect. It is not unusual to indorse and deliver policies of insurance with the same expression here present merely to secure simple-contract debts, the interest of the transferee of the policy being, not in the property itself, but merely in the continued solvency of the assured. The expression is also frequently used in cases such as that presented to this court in *McAlpine v. St. Clara F. Academy*, 101 Wis. 468, where one is expending money in the improvement of property, title to which is in another. On the other hand, we think the instances in actual business transactions where an attempt is made by such an expression to secure either profits in a transaction, or liability of one party for damages upon breach of a contract, are extremely rare, if not quite unknown. In the case at bar, in the event of sufficient depreciation in market value, the application of appellant's construction would leave it without security for the repay-

ment of its advances, although plaintiffs might be liable therefor upon abrogation of the contract,— a very improbable purpose. We must, of course, ascertain the intention of the parties to these transactions from the writings themselves, construed in the light of the surrounding circumstances. So considering them, and in view of the common experience of business affairs, we are impelled to the conclusion that the plaintiffs' contention is correct, and that the actual intention was that the appellant should be secured to the extent of the advances which it might make upon this lumber while it remained in the possession of the plaintiffs. Upon this view of the rights of the parties, the plaintiffs, before suit, had tendered, and upon the trial perfected the tender of, all to which appellant would be entitled out of the insurance money, and judgment denying the claim of the appellant in this action against such fund was proper.

There remains one further contention of appellant, which, as it has been fully argued, should receive consideration, namely, that the implication of a condition in the contract for sale of the lumber that performance be excused in the event of destruction of the specific property is excluded by the agreement to keep the same insured, and that plaintiffs are therefore liable to appellant for breach of such contract in damages equal to the market value, less the unpaid purchase price. Appellant concedes that ordinarily such condition is to be implied in executory contracts for sale of specific articles, on the authority of *McMillan v. Fox*, 90 Wis. 173, and *Cook v. McCabe*, 53 Wis. 250, but urges that such implication is always subject to the express agreement of the parties that the seller may assume the risk of the continued existence of the property, and that such assumption may be accomplished by such expressions as the "vendor warrants or insures" such continued existence. These propositions may all be conceded, but we are still confronted

with the question of construction in the present contract, What did the parties actually intend? The implication of an understanding that performance of such a contract is to be dependent on the existence of the thing bargained is so strong, and so in accord ·with common experience, that it should yield only to clear expression of a contrary purpose. The words before us are not sufficient to that end. An agreement to keep insured with policies assigned as interest may appear is by no means identical with an agreement by the party himself to insure the property or its existence. *Johnson v. Campbell*, 120 Mass. 449, 453. We have already pointed out a very different meaning as in our opinion the true one, namely, to secure to appellant return of the advances it should make, which is entirely consistent with the understanding that plaintiff should be excused from delivery of the lumber in case of its destruction, and, being so consistent, should be adopted, rather than one which does violence to it.

*By the Court.*— The respective judgments are affirmed. Respondent insurance companies will be allowed to tax in their costs for printing fifty-three pages of the printed case used jointly in this case and No. 59 (*Wunderlich v. Palatine F. Ins. Co., ante*, p. 382).