APPLETON ELECTRIC COMPANY, Appellant, vs. ROGERS and another, Trustees, Respondents.

*November 5, 1929—January 7, 1930.*

For the appellant there were briefs by *Fish, Marshutz & Hoffman,* attorneys, and *I. A. Fish* and *W. H. Voss,* of counsel, all of Milwaukee, and oral argument by *Mr. Fish.*

For the respondents there were briefs by *Quarles, Spence & Quarles,* attorneys, and *Kenneth P. Grubb,* of counsel, all of Milwaukee, and oral argument by *Mr. Grubb.*

FRITZ, J. The answer, so far as material on this appeal, admitted that the defendants, as assignees and trustees for

the benefit of creditors of the Stowell Company, on December 1, 1926, made a written contract with the plaintiff, which provided that the defendants "agree to sell all its real estate, buildings, and equipment for $30,000," and also, for $35,000, certain personal property which had been inventoried on October 31, 1926, but as to which the purchase price should be increased or decreased by a corresponding amount, if when an actual inventory was taken on December 31, 1926, it should be either more or less than $48,634. The contract further provided:

"The deal is to be consummated as of December 31, 1926. As a binder and partial payment the trustees of the Stowell Company hereby acknowledge receipt of $1,000, the balance of the purchase price to be paid between January 2, 1927, and January 15, 1927."

The answer further admitted that on December 11, 1926, a portion of the property described in the contract of sale was accidentally damaged by fire, and that a portion of that damage was covered by insurance, which the defendants had procured and had in effect for their own benefit, prior to the fire and to any negotiations with the plaintiff for the sale of the property; that the land sold by the contract had a value of $10,000; that the buildings had an appraised value, for purpose of insurance, of $388,000, and, if totally destroyed, the replacement cost in December, 1926, would have been $465,608; and that the damage thereto was $113,667, on account of which the defendants, by reason of their insurance, collected certain moneys which they refused to pay to plaintiff.

It was further alleged in the answer that immediately after the fire plaintiff examined the premises to determine the extent of the damage, and claimed, prior to December 31, 1926, that if it were to proceed with the execution of the contract it would be entitled to any insurance moneys collected by the defendants; that defendants denied that

plaintiff would have any right to such insurance moneys, and advised plaintiff that should it elect to proceed with the carrying out of said contract of sale the defendants would resist any claim which plaintiff might make to any insurance moneys which might be collected; that defendants were ready, able, and willing to return to plaintiff its deposit money and interest thereon, by reason of defendants' inability to perform the contract because of the damage to the property by the fire; that, notwithstanding its knowledge of such facts, plaintiff elected to and did proceed to carry out the contract and demanded a deed from defendants; and that the completion of said purchase by plaintiff was made without prejudice to any claim which it might have to any insurance moneys which defendants might collect, and without prejudice to any claim that the defendants might have, in their capacity as trustees, to any moneys, or any defense which they might have to any claim which might be asserted by plaintiff in respect thereto.

The question presented on this appeal is whether—when land, with buildings thereon, has been sold by a contract under which, pending the payment of the balance of the purchase price and the delivery of the deed, the vendor was entitled to and did continue in possession for a specified period, during which the buildings were, without negligence of the vendor, materially damaged by fire, so that performance with the property in the condition contemplated by the contract became impossible, and on account of which fire moneys are payable to the vendor under insurance policies, procured by the vendor at his own expense and for his own benefit, prior to any negotiation for such sale, and without any provision whatever in the contract of sale on the subject of insurance, or of destruction of the property before the vendee takes possession thereof, and thereafter the vendee, with knowledge of the damage and that the vendor was ready, able, and willing to repay, with interest, moneys re-

ceived from the vendee, and relieve him from his obligations under the contract, proceeds to accept the property and a deed thereto, without any agreement by the vendor to repair the damages or that the vendee is to have the benefit of such insurance policies or money—the vendee is entitled to such insurance money as is thereafter collected by the vendor.

There is a conflict in the authorities in relation to that question (see Williston on Contracts, notes 39 and 40 to § 928), but it has not been passed upon by this court. However, this court has held that when specific personal property is the subject of a contract of sale and is materially damaged by fire prior to the delivery thereof to the vendee, further performance is excused, and the vendee is entitled to rescind. *McMillan v. Fox,* 90 Wis. 173, 62 N. W. 1052; *Wunderlich v. Palatine F. Ins. Co.* 104 Wis. 395, 80 N. W. 471. And, although there is also some conflict in the authorities on the proposition, we have concluded that the same rule should be applied to an executory contract for the sale of real estate and buildings thereon when the latter are materially damaged by fire before the vendee has become entitled to the possession of the property or the delivery of a deed thereto.

The rule, in so far as the relative rights of the parties are affected by a fire before a conveyance has been delivered, is well stated in *Hawkes v. Kehoe,* 193 Mass. 419, 79 N. E. 766:

"We are of opinion that in this commonwealth, when, as in this case, the conveyance is to be made of the whole estate including both land and buildings, for an entire price, and the value of the buildings constitutes a large part of the total value of the estate, and the terms of the agreement show that they constituted an important part of the subject matter of the contract, it is now settled by the decision in *Wells v. Calnan* (1871), 107 Mass. 514, 9 Am. Rep. 65, that the contract is to be construed as subject to the implied

condition that it no longer shall be binding if, before the time for the conveyance to be made, the buildings are destroyed by fire. The loss by the fire falls upon the vendor, the owner; and if he has not protected himself by insurance, he can have no reimbursement of this loss, but the contract is no longer binding upon either party. If the purchaser has advanced any part of the price he can recover it back. *Thompson v. Gould* (1838), 20 Pick. (Mass.) 134, 138."

In connection with a review of some of the authorities, it was said in *Conlin v. Osborn*, 161 Cal. 659, 665, 120 Pac. 755, 758:

"Appellant's counsel cites numerous authorities to the proposition that loss due to the destruction of buildings by fire in a case like this falls upon the vendee. Undoubtedly there is authority in some jurisdictions for such doctrine, most of the cases depending upon *Paine v. Meller*, 6 Ves. Jr. 349. Typical American cases upon the matter are *Brewer v. Herbert*, 30 Md. 301, 96 Am. Dec. 582, and *Snyder v. Murdock*, 51 Mo. 175. In California, however, this rule has not been followed, at least not in recent years. *Smith v. Phœnix Ins. Co.* 91 Cal. 323, 330, 27 Pac. 738, 13 L. R. A. 475, 25 Am. St. .Rep. 191, cited by appellant, does not support this theory. While it was there stated that a vendee in possession of land may sometimes maintain an equitable title to it under his executory contract as against the vendor's legal title, the chief justice delivering the opinion of the court in that case said: 'There is a wide distinction between the proposition that the vendee in possession under an executory contract of sale may maintain the possession against the vendor as long as he performs his part of the agreement, and upon full compliance may enforce specific performance of the vendor's contract to convey the legal title, and the proposition here contended for, viz. that the vendor in such a contract, notwithstanding the destruction of the subject of the contract, in whole or in part, before the date stipulated for payment and conveyance, and his consequent inability to make a conveyance of that for which the vendee has bargained, may nevertheless compel the vendee to pay the whole contract price in exchange for a fraction of the property sold.' This language is followed by an

analysis of the apparently conflicting decisions on this subject, and the adoption of the rule announced in *Wells v. Calnan,* 107 Mass. 514, 9 Am. Rep. 65, that the destruction by fire of buildings on property in the vendor's possession prior to the date fixed for the payment of the purchase price and the conveyance of the title, defeats the vendor's right to compel performance on the part of the intending purchaser under the contract. This rule has been followed ever since in this state. In *Potts Drug Co. v. Benedict,* 156 Cal. 322, 334, 104 Pac. 432, 25 L. R. A. N. S. 609, after a discussion of the rule that, where there has been a present, unconditional, fully consummated sale, the risk accompanies the title and any loss falls upon the purchaser, this language was used: 'Where there is a mere agreement to sell, and therefore title has not passed, the loss falls on the vendor for the same reason. In such a case the vendor is excused from the performance of his contract under the rule we have discussed by reason of the destruction of the thing, but he cannot retain money already paid on account of the proposed purchase, or recover moneys remaining unpaid.' Citing *Wells v. Calnan* and *Smith v. Phœnix Ins. Co., supra,* and *Gould v. Murch,* 70 Me. 288, 35 Am. Rep. 325."

In *Smith v. Phœnix Ins. Co.* 91 Cal. 323, 333, 27 Pac. 738, referred to in *Conlin v. Osborn, supra,* the court said:

"For the purpose of this decision, it is sufficient to say that no case has been cited, and we have discovered none, in which the vendee has been held bound to pay the purchase price where a valuable part of the property has been destroyed before the day fixed for payment and conveyance, unless he has taken possession under the contract of sale, or has the right to such possession under the contract before the occurrence of the loss."

The only approach in our decisions to the question of whether such loss should fall on the vendor or vendee was in *Wetzler v. Duffy,* 78 Wis. 170, 47 N. W. 184. In that case the loss was held to fall on the vendee, under a contract which had been followed by a void deed, but that conclusion was largely based upon the fact that the vendee was in possession at the time of the fire and, under the circum-

stances, was for all practical purposes to be considered the actual owner.

Reasons why the matter of whether the vendor or the vendee was in possession should be a determining factor in placing the risk and loss, upon destruction by fire (in the absence of a delivered conveyance or an express provision as to such risk), are well stated in 2 Williston on Contracts, §§ 939, 940, and 942:

"Parties do not frequently make express provisions as to risk, but they do indicate whether they intend a present transfer of the rights of ownership or a future transfer, and there should be no doubt that they expect all the incidents of ownership to pass from the seller to the buyer at that time. That time will frequently not be, when the legal title is transferred. If, as frequently happens, a purchaser is given immediate possession under his contract, with the right to use the property as his own to the same extent as is customary with a mortgagor, the title is retained merely as security for payment of the price. . . . When by the contract the beneficial incidents of ownership are to pass is the time which the parties must regard as the moment of transfer, and no little authority supports the conclusion that then, and not before, the risk passes to the vendee." (Sec. 940.)

"The practical advantages of leaving the risk with the vendor until transfer of possession are obvious. In the first place, it is better in a doubtful case to let a loss lie where it falls, and to deny relief which requires litigation. As the vendor in possession will rarely have been paid in advance, to throw the risk on him makes no transfer of money or property necessary to adjust the rights of the parties. More important than this principle is the consideration that it is wiser to have the party in possession of property care for it at his peril, rather than at the peril of another. Of course, if the vendor in possession is negligent, and owing to his negligence the property is injured or destroyed, as matter of law the loss is his on any view; but there may be a great difference between not being so negligent as to be liable, and taking such care as would be induced by a great personal stake in the consequence. Then, too, negligence of a vendor in possession is a very difficult thing to prove, and

the burden of proving it under the English rule is upon the vendee. A further consideration is the arrangement of the insurance. If the contract immediately throws the risk on the purchaser, it practically removes it from an insurer of the property, for the vendor's insurable interest becomes only that of a mortgagee; so that, even if the insurer were forced to pay the vendor, he would be subrogated to the claim of the latter against the purchaser. This can hardly be thought a happy result, yet it is one likely to happen after any contract of sale. The vendor ordinarily has insurance at the time of the contract. The purchaser can have none, for till after that time he has no insurable interest. In fact, the purchaser relies on the vendor's insurance as a protection to the property. Even if, as is not infrequently provided, the vendor's insurance is by agreement to be assigned to the purchaser when the property is transferred, or to be held for his benefit in the meantime, either the vendor or the purchaser is not protected by the English law." (Sec. 942.)

In the case at bar the defendants were still in possession when the fire occurred on December 11, 1926, twenty days before the deal was to be consummated on December 31, 1926, and therefore the risk of loss also was still with the defendants. The plaintiff had neither procured nor arranged for any insurance. Even if there had been a rider attached to the defendants' policies, merely providing for the payment of indemnity to the plaintiff as its "interest may appear," the plaintiff, as vendee, would have been entitled to recover only an amount equivalent to the earnest money which it had paid. *Wunderlich v. Palatine F. Ins. Co.* 104 Wis. 395, 80 N. W. 471. After the fire, with full knowledge thereof and that the defendants did not intend to permit the plaintiff to have any benefit of their insurance, but were ready, able, and willing to return to the plaintiff its deposit of earnest money and to rescind the contract, the plaintiff nevertheless elected to complete performance. The defendants were under no obligation whatsoever to procure or carry insurance for the benefit of the plaintiff. If the

defendants had not carried any insurance or had surrendered the policies before the fire occurred, they would not have become liable to the plaintiff for failing to keep the property insured. The defendants paid the premiums without receiving any consideration from plaintiff, and it was under no obligation to reimburse the defendants for such premiums. The insurance policies were mere personal contracts between the defendants and the insurers, and did not run with the land. The defendants never agreed to sell those policies, or any interest thereunder, to plaintiff, or to hold those policies in trust for plaintiff. In view of all those facts and circumstances the defendants were entitled to retain the proceeds of the policies. *Brownell v. Board of Education,* 239 N. Y. 369, 146 N. E. 630; *Rayner v. Preston,* L. R. 18 Ch. Div. 1 (1881); *White v. Gilman,* 138 Cal. 375, 71 Pac. 436.

Great stress is laid by appellant upon its contention, supported by credible authorities, that because it is said that under the doctrine of relation the deed to which a vendee is entitled upon performance then relates back to the contract and the legal title is then to be considered, as between the parties, as having vested in the grantee from the time of the making of the contract, the contract operates as a conveyance, and the vendor is to be considered a trustee of the property for the purchaser. Those contentions, and the authorities upon which they are based, are ably discussed in 2 Williston on Contracts, §§ 929, 936–939. They are also well answered in the following excerpts, which we quote with approval, from opinions in the leading case of *Rayner v. Preston,* L. R. 18 Ch. Div. 1, to wit:

"It was said that the vendor is, between the time of the contract being made and being completed by conveyance, a trustee of the property for the purchaser, and that as, but for the fact of the legal ownership of the building insured being vested in him, he could not have recovered on the

policy, he must be considered a trustee of the money recovered. In my opinion this cannot be maintained. An unpaid vendor is a trustee in a qualified sense only, and is so only because he has made a contract which a court of equity will give effect to by transferring the property sold to the purchaser, and so far as he is a trustee he is so only in respect of the property contracted to be sold. Of this the policy is not a part. A vendor is in no way a trustee for the purchaser of rents accruing before the time fixed for completion, and here the fire occurred and the right to recover the money accrued before the day fixed for completion. The argument that the money is received in respect of property which is trust property is, in my opinion, fallacious. The money is received by virtue or in respect of the contract of insurance, and though the fact that the insured had parted with all interest in the property insured would be an answer to the claim, on the principle that the contract is one of indemnity only, this is very different from the proposition that the money is received by reason of his legal interest in the property." (Per COTTON, L. J., p. 6.)

"With the greatest deference it seems wrong to say that one is a trustee for the other. The contract is one which a court of equity will enforce by means of a decree for specific performance. But if the vendor were a trustee of the property for the vendee, it would seem to me to follow that all the product, all the value of the property received by the vendor from the time of the making of the contract ought, under all circumstances, to belong to the vendee. What is the relation between them, and what is the result of the contract? Whether there shall ever be a conveyance depends on two conditions: first of all, whether the title is made out, and secondly, whether the money is ready; and unless those two things coincide, at the time when the contract ought to be completed, then the contract never will be completed and the property never will be conveyed. But suppose, at the time when the contract should be completed, the title should be made out and the money is ready, then the conveyance takes place. Now it has been suggested that when that takes place, or when a court of equity decrees specific performance of the contract, and the conveyance is made in pursuance of that decree, then by relation back the vendor has

been trustee for the vendee from the time of the making of the contract. But again, with deference, it appears to me that if that were so, then the vendor would in all cases be trustee for the vendee of all the rents which have accrued due, and which have been received by the vendor between the time of the making of the contract and the time of completion; but it seems to me that that is not the law. Therefore, I venture to say that I doubt whether it is a true description of the relation between the parties to say that from the time of the making of a contract, or at any time, one is ever trustee for the other. They are only parties to a contract of sale and purchase, of which a court of equity will under certain circumstances decree a specific performance." (Per BRETT, L. J., p. 10.)

It is our conclusion that the facts stated in the answer constituted a defense to plaintiff's alleged cause of action, and that the court rightly overruled plaintiff's demurrer to that answer.

*By the Court.*—Order affirmed.