Korntved, Respondent, vs. American Insurance Company, Appellant.

*November 7—December 4, 1934.*

For the appellant there was a brief by *Bird, Smith, Okoneski & Puchner* of Wausau, and oral argument by *R. E. Puchner.*

For the respondent there was a brief by *Norman L. Miswald,* attorney, and *Froede & Ehrle* of counsel, all of Mil-

waukee, and oral argument by *Mr. Miswald* and *Mr. Clarence Ehrle.*

NELSON, J.   So many of the facts as are necessary to an understanding of the decision will be recited.   In April, 1919, the plaintiff sold a farm belonging to him to one Ole Fladvid, on a land contract.   The purchase price was $12,000, payable in instalments of $500 per annum, with interest at five per cent.   The contract required Fladvid to keep the buildings insured, and contained the usual land contract forfeiture provisions.   Fladvid made one payment of $500 on the principal and some interest.   After operating the farm for several years he concluded that he would not be able to keep up the payments of either principal or interest.   He asked the plaintiff to make some different arrangement.   On April 13, 1923, the plaintiff and Fladvid entered into a written lease wherein and whereby the plaintiff leased the identical premises covered by the contract to Fladvid for one year at an agreed annual rental of $300, payable at the rate of $25 per month.   The lease which was on a printed form contained the following specific typewritten agreement.

"It is also agreed that if the party of the second part does not live up to the agreements of this contract he will deliver up the property to the party of the first part and will give the party of the first part clear title to the property without legal action."

A similar written lease was entered into on the 13th day of each April thereafter, up to and including 1931.

On July 6, 1927, there was issued to Fladvid an insurance policy which ran for five years.   A loss-payable clause was attached to the policy, which provided as follows:

"Loss, if any, on building insured under this policy, is made payable to Peter Korntved, Spencer, Wisconsin, mortgagee, as his interest may appear at the time of loss; subject, however, to all the conditions and stipulations of this policy."

The application for the policy was made out by one Bloczynski, the defendant's local agent. It was stated therein that Fladvid was the sole owner of the property and that he held the land on "contract." The question as to how much had been paid on the contract was left unanswered. . The copy of the original land contract held by Fladvid was not surrendered at the time the lease arrangement was entered into, nor were the premises covered by it quitclaimed to the plaintiff until after the fire. At the time the policy was issued Fladvid was in possession of the premises and was not in default under the lease. In the fall of 1931 Fladvid had failed for several months to pay the stipulated rent and had not paid the taxes as required by the lease. The plaintiff went to the farm and discussed the situation with Fladvid. Fladvid said he could not pay. Later on in February, 1932, Fladvid again told the plaintiff that he could not make the payments and that he thought the best thing to do was to move off. It was agreed that he was to leave the place, but it was not stated just when. Thereafter Fladvid prepared to remove from the premises. The plaintiff went upon the premises several days before Fladvid left and took with him a few articles of personal property. His son-in-law and the latter's family moved into the house on March 20th. The last two loads of Fladvid's property were moved out on that day. . It appears that a manure spreader, a disc, and several head of stock were left by Fladvid on the premises. But it further appears that the machinery was left by Fladvid to reimburse the plaintiff for the unpaid rent, and that the stock was chattel mortgaged to Bloczynski.

A fire occurred on March 23, 1932. The policy in question was not assigned or transferred before the fire. On September 12, 1932, Foltz, the superintendent of defendant's loss department, met Fladvid and Korntved at Unity. A non-waiver agreement was entered into by the company and

Fladvid. The plaintiff, however, refused to sign it. Foltz stated that he had no authority to waive any of the rights of the company or any of the terms of the policy, whereupon a compromise of the claim was discussed. Foltz agreed to pay $1,200 in full settlement of the loss and wrote out a draft for that amount payable to Fladvid and the plaintiff. Foltz drew up a release of liability which Fladvid signed but which the plaintiff refused to sign.

Trial was ultimately had to the court and a jury. At the closing of the testimony both parties moved for a directed verdict which operated to take the case from the jury. The court concluded that on July 6, 1927, the date of the policy, the land contract was in force and effect; that the time for payment of principal had been suspended and the interest reduced to the equivalent of $25 per month; that Fladvid was not in default and was in possession of the premises and legally entitled to perform the land contract and obtain legal title, and that Fladvid was, at the date of the policy, the unconditional sole owner of the property subject only to the interest of the plaintiff, of which the insurance company was fully informed; that the policy of insurance was valid when issued; that there was no change in the interest or title, nor complete change of possession of the subject of insurance until the day after the fire in question; and that under the terms of the policy the plaintiff had the right to enforce the payment of the full amount of insurance on the dwelling burned. The court, however, found that no proofs of loss had been furnished by either Fladvid or the plaintiff to the company; that the company had not waived the provision of the policy requiring proofs of loss to be furnished and that such failure operated to defeat the action. Judgment was thereupon entered dismissing the complaint upon the merits. Thereafter, apparently pursuant to the provisions of sec. 269.46, the plaintiff obtained an order requiring the de-

fendant insurance company to show cause why the plaintiff should not be relieved from the judgment, asserting as a ground for relief, the mistake, inadvertence, and excusable neglect of his attorney in failing to offer proof of waiver by the defendant insurance company of the provision of the policy requiring proofs of loss to be furnished. Upon hearing the order to show cause the court opened up the judgment and permitted the plaintiff to offer proof relating to the waiver mentioned. After hearing the evidence the court made further findings, and concluded that its former conclusions as to waiver should be set aside and the following substituted in lieu thereof:

"That the defendant insurance company was fully advised as to every fact and circumstance which could have been disclosed by the making of any proofs of loss, and that it, by its conduct and correspondence, waived the making of formal proofs of loss."

The court thereupon entered judgment in favor of the plaintiff and against the defendant for the sum of $2,200, the full amount of the policy, together with interest and costs.

The defendant assigns as error: (1) The opening up of the first judgment to permit the plaintiff to offer evidence of the waiver by the company of proofs of loss, and (2) the entering of the second judgment in favor of the plaintiff. The defendant contends: (1) That the court abused its discretion in opening up the judgment; (2) that the undisputed facts show that the interest of the plaintiff in the property at the time the policy was issued was not that of unconditional and sole ownership (no agreement in writing otherwise providing having been added to the policy), sec. 203.01; and (3) that the policy, even though valid when issued, became void as to Fladvid and also as to the plaintiff because of the following provision:

"This entire policy shall be void unless otherwise provided by agreement in writing added hereto . . . if any change,

other than by the death of an insured, take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard)."

In our view, only the third contention need be considered since that disposes of the controversy adversely to the plaintiff.

The policy had attached to it only the short form loss-payable clause. Under such a clause the rights of the plaintiff are no greater than those of Fladvid, the named assured. *Keith v. Royal Ins. Co.* 117 Wis. 531, 94 N. W. 295. If Fladvid cannot recover under the policy the plaintiff cannot. *Wunderlich v. Palatine F. Ins. Co.* 104 Wis. 395, 80 N. W. 471.

It appears that in 1923 Fladvid was unable to perform the terms of the land contract, and asked the plaintiff to enter into a different arrangement; that thereafter nine separate annual leases were entered into, each of which specifically provided:

"It is also agreed that if the party of the second part does not live up to the agreements of this contract he will deliver up the property to the party of the first part and will give the party of the first part clear title to the property without legal action."

It further appears that in the fall of 1931 Fladvid was in serious default, he having paid no rent for a number of months and no taxes that year; that the plaintiff went to the farm to talk the matter over, and was told by Fladvid that he could not pay; that again in February, 1932, Fladvid told the plaintiff that he could not make the payments, and that he thought the best thing to do was to move off; that he then and there agreed to leave the premises; that thereafter, on March 20th, Fladvid removed from the premises and surrendered them to the plaintiff, whose son-in-law moved in; that although Fladvid left a manure spreader and a disc on the farm he did so with the clear intention of reimbursing the

plaintiff for the unpaid rent; and although he left several head of stock on the premises they were subject to a chattel mortgage held by Bloczynski, and were, for all practical purposes as appears by the evidence, abandoned to the latter, who made arrangements with the plaintiff for their keep on the farm. The plaintiff himself testified that it was certainly and absolutely understood when Fladvid left on March 20th that the latter was to give up his rights to the property. Three days thereafter Fladvid voluntarily signed a quitclaim deed to the premises.

However regretable the result may be, we can find nothing in the record which will permit us to say that after the policy was issued and before the date of the fire no change had taken place in Fladvid's interest, title, or possession of the subject of the insurance. When he removed from the premises he obviously was carrying out the agreement made by him in the nine different leases, and thereby clearly relinquished and terminated all of his rights under either the land contract or the lease then existing. It was said by the supreme court of the United States in *Jennison v. Leonard,* 21 Wall. 302, 22 U. S. (L. Ed.) 539, that "no mode of terminating an equitable interest [of the vendee] can be more perfect than a voluntary relinquishment, by the vendee, of all rights under the contract, and a voluntary surrender of the possession to the vendor."

In *Goldsmith v. Darling,* 92 Wis. 363, 66 N. W. 397, in discussing proof by parol of a verbal agreement to surrender a lease, it was said that it is elementary that a verbal agreement of surrender, acted upon by an actual surrender and acceptance, is sufficient to cancel the lease. Under the undisputed facts we are impelled to hold that at the time of the fire Fladvid had abandoned, surrendered, and relinquished all of his interest in the premises.

*By the Court.*—Judgment reversed, with directions to dismiss the complaint.