**MESSNER, INCORPORATED, a Wisconsin corporation, Plaintiff,**

v.

**The TRAVELERS INDEMNITY COMPANY, Defendant.**

No. 85–C–303–C.

United States District Court, W.D. Wisconsin.

Nov. 5, 1985.

Thomas G. Ragatz and Gordon Davenport III, Foley & Lardner, Madison, Wis., for plaintiff.

William J. Sneckenberg, Chicago, Ill., Ward I. Richter, Bell, Metzner & Gierhart, S.C., Madison, Wis., for defendant.

## ORDER

CRABB, Chief Judge.

This is a civil action for money damages in which plaintiff asserts that it is a loss payee under an insurance policy issued by defendant to the Marsala Restaurant, entitled to payment for fire damage to restaurant equipment and supplies plaintiff sold to the restaurant. Plaintiff also asserts a tort claim against defendant, claiming that defendant has acted in bad faith in refusing to pay plaintiff money owed under the insurance policy.

Defendant has moved to dismiss this action for failure to state a claim. Defendant asserts that plaintiff's first claim must be dismissed because a loss payee may not maintain an action in its own name to collect the proceeds of an insurance policy. Defendant argues that the second claim must be dismissed because a loss payee cannot maintain an action for the tort of bad faith, and because plaintiff's complaint fails to allege certain facts necessary to state a claim of bad faith.

## FACTS

Taking the allegations of the complaint as true, and for the sole purpose of deciding this motion, I find the following as fact.

Plaintiff is a Wisconsin corporation engaged in the business of selling and servicing restaurant equipment and supplies. Defendant is a Connecticut insurance corporation with its principal place of business located in Hartford, Connecticut, and is licensed to do business in Wisconsin. Defendant is engaged in the business of providing various types of insurance.

On August 18, 1983, plaintiff sold $158,-767.40 worth of restaurant equipment, supplies and furnishings to Marsala Restaurant and Pizzeria Lunch, Inc., the operator of a restaurant in Beloit, Wisconsin. This sale was made pursuant to a conditional sales contract, under which plaintiff reserved a security interest in the equipment. In addition to the items covered by this contract, Marsala purchased various items of equipment and supply from plaintiff on open account between November 1, 1983 and February 8, 1984; these purchases totaled $4,472.66.

On October 13, 1983, defendant issued a property insurance policy to Marsala, insuring the restaurant's real and personal property against covered losses. On March 31, 1984, defendant issued a lender's certificate of insurance designating plaintiff as first loss payee under this policy for all of the personal property usual to the insured's business, subject to a liability limit of $200,-000.00.

On May 27, 1984, the building occupied by Marsala was damaged by fire. The items purchased by Marsala from plaintiff

suffered substantial damage and destruction.

Marsala failed to pay plaintiff for the restaurant items it purchased. On July 27, 1984, plaintiff brought suit in Rock County Circuit Court to recover the amount due from Marsala and to foreclose its security interest in the equipment. *Messner, Incorporated and M & I Bank of Hilldale v. Marsala Restaurant & Pizzeria Lunch, Inc., Andrew Ingarra and Pamela Ingara,* Case No. 84–CV–298. On August 13, 1984, the court entered a preliminary injunction allowing plaintiff to take possession of the collateral. On August 23, 1984, the court entered final judgment in favor of plaintiff for all amounts due and for foreclosure of its security interest. On March 26, 1985, the M & I Bank of Hilldale assigned its interest in that judgment to plaintiff.[1]

Plaintiff took physical possession of the equipment in September, 1984. On September 19, 1984, plaintiff submitted a claim to defendant for $149,321.96, based on plaintiff's estimate of the loss to the equipment and plaintiff's expenses in retrieving the equipment. Plaintiff did not attempt to repair any of the equipment before submitting its claim.

Marsala has not submitted a claim to defendant for the fire damage to the equipment.

Defendant responded to plaintiff's claim on December 6, 1984. Defendant offered to pay $26,806.55 for those items it considered a total loss and $5,938.00 for cleaning the remaining items, for a total payment of $32,744.55. On December 18, 1984, defendant revised its offer by adding $4,000.00 for plaintiff's costs for "inspection and servicing" the equipment.

Unable to reach agreement with defendant, plaintiff proceeded with attempts to repair and sell the damaged equipment. Plaintiff notified defendant of the repairs and sales, and defendant did not object. On March 18, 1985, plaintiff submitted a revised claim to defendant for $131,382.86.

The revised claim reflected the results of the repairs and sales and the storage costs incurred by plaintiff. Defendant has refused payment of this revised claim.

## OPINION

*Loss payee's action for insurance proceeds*

Defendant asserts that under Wisconsin law a loss payee may not independently maintain an action for insurance proceeds. Defendant relies on the most recent Wisconsin case addressing this issue, *Wunderlich v. The Palatine Fire Insurance Co.,* 104 Wis. 395, 80 N.W. 471 (1899). Plaintiff attempts to distinguish the *Wunderlich* case from several cases of even more ancient vintage, which, plaintiff asserts, establish a loss payee's right to bring an action in its own behalf.

In *Wunderlich,* the George E. Foster Lumber Company was named a loss payee on policies insuring Wunderlich from fire damage to a certain lumber supply. Foster had an option to purchase a portion of the lumber supply from Wunderlich. After the option had been accepted, but before delivery, fire destroyed the lumber. Wunderlich's insurance claims were denied by the carrier on the basis of fraudulent representations made on the proofs of loss. Wunderlich sued the insurer, and Foster, the loss payee, was impleaded. Foster filed cross complaints against the insurance carrier on two claims. The first claim was based on the policy's "lumber clause," which insured whoever proved to be the owner of any lumber held by Wunderlich. The second claim sought enforcement of the policy under the loss payable clause. The trial court dismissed Foster's cross complaints on the pleadings.

The Wisconsin supreme court affirmed. The court rejected Foster's claim under the "lumber clause" because Foster did not have an ownership interest in the lumber. The court also rejected Foster's claim under the loss payable clause, stating:

---

**1.** The M & I Bank of Hilldale was the second loss payee on Marsala's insurance policy.

The rights of a claimant under [the loss payable] clause, *where the title and ownership of the property remains in the assured,* are no longer open to doubt or debate in this state.... The contract is with the assured, to him alone is the insurer liable, and upon his acts will that liability depend. The claimant under such a provision is not an assignee of the policy so as to hold an independent right of recovery, but a mere appointee to receive ... the money which the assured is entitled to recover, but to receive it under and in the right of the assured.

*Wunderlich,* 104 Wis. at 402, 80 N.W. 471 (emphasis added).

Contrary to defendant's interpretation, *Wunderlich* does not bar all independent actions by a loss payee. Rather, *Wunderlich*'s prohibition appears to be limited to situations in which the "title and ownership of the property remains in the assured;" in other words, when the loss payee has no ownership interest in the property.[2]

This interpretation finds support in several Wisconsin cases predating *Wunderlich,* the most pertinent of which is *Hammel v. The Queen Insurance Co.,* 50 Wis. 240, 6 N.W. 805 (1880). In *Hammel,* the mortgagee of the insured property was the loss payee under the mortgagor's insurance policy; the mortgage debt was alleged to exceed the amount insured by the policy. After fire destroyed the property, the loss payee brought suit on the policy. The defendant insurance company demurred on the grounds that the loss payee could not bring an action without joining the insured as a party plaintiff. In affirming the order

overruling the demurrer, the supreme court stated:

The legal title to the policy of insurance was as effectually in the plaintiff as if it had been assigned to him. He was mortgagee of the premises insured, and the loss, if any, was made payable to him as his interest might appear. His mortgage debt is averred to be greater than the sum insured. Thus his interest appears to be the whole interest in the policy. In these circumstances it is difficult to perceive why the mortgagor is a necessary party. It has been held in this court that where the legal title of the policy is in the creditor, he may maintain an action on the policy in his own name.

50 Wis. at 243–44, 6 N.W. 805 (citations omitted). The rationale of *Hammel* is that when the mortgage debt exceeds the amount insured by the policy, the mortgagee—loss payee has constructive legal title to the insurance policy.

■ The facts of the present case fall between those of *Hammel* and *Wunderlich.* Unlike *Hammel,* the debt owed plaintiff is less than the amount insured by the policy.[3] But unlike *Wunderlich,* plaintiff has an ownership interest in the insured property by virtue of its security interest. Therefore, the question to be decided is whether a loss payee who has an ownership interest in the insured property but whose interest is less than the total amount insured by the policy may bring an action on the policy. The *Hammel* case suggests in dicta that the loss payee may do so. *Hammel,* 50 Wis. at 244, 6 N.W. 805 ("If the mortgagee alone sue, and recover more

---

**2.** In Wisconsin cases subsequent to *Wunderlich,* loss payees have brought actions on insurance policies. *See Korntved v. American Insurance Co.,* 216 Wis. 470, 257 N.W. 670 (1934); *Martin v. Tower Insurance Co.,* 119 Wis.2d 48, 349 N.W.2d 90 (Ct.App.1984). Although neither of these cases addressed a loss payee's ability to bring an action, the cases do suggest that *Wunderlich* did not establish an absolute bar to suits by loss payees.

**3.** The complaint does not state the amount Marsala owes plaintiff. In its brief, plaintiff states that its judgment against Marsala in the Rock County action is for $148,972.65. The insurance

policy limited the amount payable to plaintiff to $200,000.00

Plaintiff asserts that the *Hammel* rule applies because the amount Marsala owes plaintiff exceeds defendant's estimate of the amount of the insured loss. However, the relevant figure in *Hammel* for comparison with the debt was not the amount of the loss, but the amount of the policy coverage. *Hammel* states that when the debt exceeds the policy coverage, the mortgagee has constructive title to the policy. *Hammel* is silent on a mortgagee's rights when, as in the present case, the debt exceeds the amount of the insured loss but not the policy limits.

than his debt, he will hold the surplus as trustee for his debtor."). No Wisconsin case addresses this issue directly, but other authorities provide guidance.

A leading treatise on insurance law describes a mortgagee's right to sue in its own name as follows:

> It is usually considered that either the mortgagor or mortgagee has a sufficient legal interest to permit him to sue for the policy proceeds.... Thus, the usual rule is that a mortgagee, particularly where such interest is recognized by a loss payable clause in the policy, is a proper person to maintain an action for the loss.

20B Appleman, *Insurance Law and Practice* § 11745, at 41 (1980) (footnotes omitted). This statement is consistent with the Wisconsin rule established in *Hammel*. Appleman then addresses the problem not addressed by *Hammel* or *Wunderlich:* a mortgagee's right to sue when the mortgage debt is less than the amount of the policy:

> If the property is insured for more than the mortgage, the mortgagee may still recover in his own name to the extent of his interest.

*Id.* at 43. Thus, a mortgagee may sue under a loss payable clause even though his interest is less than the amount of the policy. These principles also apply to loss payees who have interests in the insured property but who are not mortgagees:

> The result is, as has been seen under prior discussions as to mortgagees and other persons interested, that a payee under a loss payable clause may, by the overwhelming weight of authority, sue in his own name to recover a loss occurring under a policy of property insurance.

*Id.,* § 11749, at 48.

I conclude that a loss payee who has an ownership interest in the insured property may bring an action to recover on the insurance policy.[4] Accordingly, I will deny defendant's motion to dismiss plaintiff's first cause of action.

*Loss payee's action for bad faith*

In its second cause of action, plaintiff asserts that defendant has acted in bad faith in refusing to settle its insurance claim. Defendant contends that this claim must be dismissed because a loss payee cannot bring an action for bad faith.

Under Wisconsin law, an insurance company may be liable for extracontractual damages as a result of tortious conduct in the settlement of claims. *See Kranzush v. Badger State Mutual Casualty Co.,* 103 Wis.2d 56, 60, 307 N.W.2d 256 (1981). The tort of bad faith is not a tortious breach of contract, but is a separate intentional wrong that results from a breach of the special duty imposed on the insurer as a result of its contractual relationship with the insured. *See Anderson v. Continental Insurance Co.,* 85 Wis.2d 675, 687, 271 N.W.2d 368 (1978).

The Wisconsin courts have developed three theories of bad faith actions against insurers. In the first situation, an insured party may maintain an action for bad faith based on its insurer's bad faith failure to settle a third-party claim. The rationale for allowing tort recovery in this situation is that if the insurer fails to settle a third-party claim within the limits of the policy and chooses to litigate the matter, the insured will be liable for that portion of any judgment which exceeds the policy limits. An insurance company that so exposes its insured to excess liability has breached its fiduciary duty to act on behalf of the insured and to exercise the same standard of care that the company would exercise with respect to its own business. *See Kranzush,* 103 Wis.2d at 60–61, 307 N.W.2d 256.

In the second situation, an insured party may bring a bad faith action based on the insurance company's handling of a claim by the insured. Unlike the third-party claim situation, there is no danger that the insured will face excess liability when the insurer fails to settle such first-party claims. Nevertheless, Wisconsin allows the insured to bring a bad faith action

---

**4.** I need not decide whether *Wunderlich's* prohibition of actions by loss payees who lack any ownership interest in the insured property is still good law in Wisconsin.

based on a first-party claim because the insurance contract between the insurer and the insured imposes an implied covenant of good faith and fair dealing, the violation of which is actionable as a separate tort. *See Kranzush*, 103 Wis.2d at 61–62, 307 N.W.2d 256; *Anderson*, 85 Wis.2d at 686, 271 N.W.2d 368.

In these first two types of bad faith action, the party bringing the bad faith action is the insured. In the third situation in which Wisconsin law recognizes a bad faith claim against an insurer, the party alleging bad faith is not the insured. In *Coleman v. American Universal Insurance Co.*, 86 Wis.2d 615, 273 N.W.2d 220 (1979), the Wisconsin supreme court held that an injured worker may bring a bad faith claim against her employer's insurer based on its handling of her claim for benefits under a worker's compensation policy. Although the injured worker is not the insured party, the employee and the insurer "occupy relative positions which are analogous to the insurer-insured relationship at the heart" of the bad faith tort. *Kranzush*, 103 Wis.2d at 66, 307 N.W.2d 256.[5]

In recent cases, Wisconsin courts have been unwilling to extend the insurers' duty to act in good faith to parties other than the insured. In *Kranzush v. Badger State Mutual Casualty Co.*, 103 Wis.2d 56, 307 N.W.2d 256 (1981), the supreme court held that a tort victim could not bring a bad faith action against the tortfeasor's insurer for failure to settle a claim.

> The insurer's duty of good faith and fair dealing arises from the insurance contract and runs to the insured. No such duty can be implied in favor of the claimant from the contract since the claimant is a stranger to the contract and to the fiduciary relationship it signifies. Nor can a claimant reasonably expect there to

be such a duty, inasmuch as the insurer and the insured are aligned in interest against the claimant. In the absence of any such duty, the third-party claimant cannot assert a claim for failing to settle his claim....

*Kranzush*, 103 Wis.2d at 73–74, 307 N.W.2d 256.

The lack of a contractual relationship between the parties was also the basis for the court's recent holding that an excess liability insurer may not bring a bad faith action against a primary insurer. *See Loy v. Bunderson*, 107 Wis.2d 400, 320 N.W.2d 175 (1982). In *Loy,* the court reiterated that the insurer's duty of good faith runs to the insured, and stated that "[b]ad faith can only arise where an insurer has committed the tort against its own insured." 107 Wis.2d at 428, 320 N.W.2d 175. *See also Teigen v. Jelco of Wisconsin, Inc.*, 124 Wis.2d 1, 11, 367 N.W.2d 806 (1985) ("In *Kranzush*, we refused to extend the obligation of good faith beyond the relationship between the insurer and its insured.").

■ Application of these principles to the present case presents a difficult question. Plaintiff is not the named insured. Neither, however, is it a stranger to the insurance contract—defendant issued a lender's certificate of insurance naming plaintiff as the first loss payee. A broad reading of *Coleman* would suggest that because a loss payee occupies a position analogous to the insured by virtue of the loss payable clause, a loss payee should be able to bring a bad faith action. However, cases subsequent to *Coleman* state that *Coleman* should not be read broadly, but must be limited to its facts. *See Bruheim v. Little*, 98 Wis.2d 178, 180, 295 N.W.2d 793 (Ct.App.1980), *aff'd* 103 Wis.2d 96, 307 N.W.2d 276 (1981).[6] In light of the oft-re-

---

**5.** Another policy favoring bad faith actions by injured workers against their employer's insurer is that a recalcitrant insurer subverts the goal of the worker's compensation statutes of providing certain and swift recovery. *See Kranzush,* 103 Wis.2d at 65, 307 N.W.2d 256; *Coleman,* 86 Wis.2d at 621, 273 N.W.2d 220.

**6.** A major factual distinction between the present case and the worker's compensation situation is that an injured worker's rights are limited by the worker's compensation statutory scheme. Providing an extra incentive to insurers to handle worker's compensation claims swiftly and fairly is one of the primary reasons the Wisconsin courts have permitted injured

peated language in recent Wisconsin cases that an insurer's duty of good faith runs only to the insured, and considering the unwillingness of the Wisconsin supreme court in these cases to expand the availability of the tort of bad faith, I conclude that under Wisconsin law a loss payee may not maintain an action for bad faith.

 Plaintiff also suggests that it may bring a bad faith action because it is a judgment creditor of the insured, citing *Uebelacker v. Horace Mann Insurance Co.*, 500 F.Supp. 180 (E.D.Wis.1980). In *Uebelacker*, Judge Reynolds stated:

> The right of a third party claimant to maintain an action for bad faith against the insurer has, however, been recognized only where the claimant has a vested claim, whether as a result of statutory entitlement, for example under the worker's compensation statutes, or as a result of an unsatisfied judgment against the insured.

500 F.Supp. at 183. The court cited a Wisconsin case (*Coleman*) for the right of an injured worker to bring a bad faith action against the employer's insurer, and two California cases, *Royal Globe Insurance Co. v. Superior Court*, 23 Cal.3d 880, 153 Cal.Rptr. 842, 592 P.2d 329 (1979); *Barrera v. State Farm Mutual Automobile Insurance Co.*, 71 Cal.2d 659, 79 Cal.Rptr. 106, 456 P.2d 674 (1969), for the proposition that a judgment creditor may maintain a bad faith claim. In *Barrera*, the California supreme court held that a tort victim who has obtained a judgment against the tortfeasor may proceed against the tortfeasor's insurance company to compel payment of an unsatisfied judgment, but the case did not involve a bad faith claim. In *Royal Globe*, the California court held that a tort victim could bring a bad faith action

against the tortfeasor's insurance company. These California cases do not establish the broad proposition that any judgment creditor may bring a bad faith action against the judgment debtor's insurer. Moreover, in a case decided shortly after *Uebelacker*, the Wisconsin supreme court expressly declined to follow *Royal Globe*. See *Kranzush*, 103 Wis.2d at 81–82, 307 N.W.2d 256.[7] I conclude that Wisconsin law does not permit a judgment creditor to bring a bad faith action against the judgment debtor's insurer.

### ORDER

IT IS ORDERED that defendant's motion to dismiss plaintiff's first cause of action is DENIED.

IT IS FURTHER ORDERED that defendant's motion to dismiss plaintiff's second cause of action is GRANTED.

---

workers to bring bad faith actions against their employers' insurers. See *Kranzush*, 103 Wis.2d at 65, 307 N.W.2d 256.

**7.** The *Royal Globe* court held that California's insurance code authorized a tort victim to sue the tortfeasor's insurer for bad faith. In *Kranzush*, the Wisconsin court held that there was no analogous provision in the Wisconsin insurance code which might give rise to such an action.

103 Wis.2d at 71–72, 307 N.W.2d 256. The California supreme court had previously held that the insurance contract alone does not impose a duty of good faith on insurers in their dealings with third parties that would give rise to a bad faith cause of action by the third party. See *Murphy v. Allstate Insurance Co.*, 17 Cal.3d 937, 132 Cal.Rptr. 424, 553 P.2d 584 (1976).